IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **FRANK ELMER LANE, M.D.,**<br><br>Plaintiff,<br><br>v.<br><br>**BRINT CARLTON,** in his official capacity as Executive Director of the Texas Medical Board; **DR. SHERIF ZAAFRAN,** in his official capacity as President of the Texas Medical Board; **KRISTOFER S. MONSON,** in his official capacity as Chief Administrative Law Judge of the State Office of Administrative Hearings; **and JOHN DOES 1-5,** in their official capacities only, being those state officials possessing authority to administer, supervise, implement, or provide the prospective equitable relief sought herein whose identities are presently unknown,<br><br>Defendants. | § § § § § § § § § § § § § § § § § § § § § § | Civil Action No. **3:26-CV-2481-L** |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the court is Plaintiff's Emergency Motion for Temporary Restraining Order, Preliminary Injunction, and Other Appropriate Interim Equitable Relief ("Motion") (Doc. 4), filed August 4, 2026. The court **vacates** the Standing Order of Reference (Doc. 6) previously entered in this case, and, for the reasons that follow, it **denies** Plaintiff's request for an *ex parte* temporary restraining order ("TRO") and **denies without prejudice** his remaining requests for relief.

## I. Background

On July 28, 2026, Plaintiff Frank Elmer Lane, M.D. ("Plaintiff" or "Dr. Lane") brought this action against Brint Carlton ("Mr. Carlton"), in his official capacity as Executive Director of the Texas Medical Board; Dr. Sherif Zaafran ("Dr. Zaafran"), in his official capacity as President

of the Texas Medical Board; and Kristofer S. Monson ("Judge Monson" or "ALJ"), in his official capacity as Chief Administrative Law Judge of the State Office of Administrative Hearings. He also sues and names in his Complaint John Does 1 through 5, "in their official capacities only, being those state officials possessing authority to administer, supervise, implement, or provide the prospective equitable relief sought herein whose identities are presently unknown." Doc. 1 at 1.

Plaintiff alleges that disciplinary proceedings were initiated against him by the Texas Medical Board on or about July 9, 2025; that he initially believed that he was capable of representing himself; and that he waited until June 3, 2026, approximately eleven months into the proceedings and approximately two months before the final administrative evidentiary hearing scheduled for August 17, 2026, before retaining counsel to represent him. In addition, Plaintiff alleges that, by the time he realized that he was in over his head and retained counsel, the procedural posture of the proceedings had significantly advanced, sanctions proceedings had been initiated against him by Staff of the Texas Medical Board, discovery had closed, and meaningful prehearing deadlines had expired. Plaintiff alleges that, during the prehearing conference on June 11, 2026, his counsel learned that the pending Motion for Sanctions would be addressed during that hearing. According to Plaintiff, his counsel did not realize from his prior review of the electronic docket that the pending Motion for Sanctions would be addressed during the June 11, 2026 pretrial hearing, and Plaintiff apparently did not advise his new counsel regarding the status of the sanctions proceedings against him, although this issue arose before new counsel came on board.

Plaintiff's counsel explained to Judge Monson during the prehearing conference that he had only recently been retained to represent Dr. Lane, and that, although he immediately began reviewing the administrative record, the electronic docket, discovery materials, scheduling orders,

and pending motions, he had not yet completed his review or undertaken the investigatory efforts that he believed were necessary to prepare Dr. Lane's defense. Plaintiff's counsel, therefore, requested an opportunity to review and respond to the Motion for Sanctions before the sanctions issues were adjudicated. Counsel also requested to reopen discovery and sought other unspecified "procedural relief." Doc. 1 at 11.

Plaintiff further alleges that, during the prehearing conference, Judge Monson "discussed Plaintiff's prior litigation involving the Texas Medical Board in connection with [his] responsibility for procedural decisions made while representing himself." *Id.* at 10. Plaintiff, however, contends that his prior litigation history was not a basis for the pending Motion for Sanctions or "an asserted ground for denying" his requests for a continuance, to reopen discovery, or "other procedural relief." *Id.*

Plaintiff alleges that his counsel promptly filed motions after the June 11, 2026 prehearing conference to seek reconsideration of the procedural rulings announced during the conference and requested additional procedural relief that counsel believed was "reasonably necessary to permit meaningful preparation for the scheduled evidentiary hearing" on August 17, 2026. *Id.* at 9. These written requests by Plaintiff's counsel:

> ***renewed*** Plaintiff's request for a one hundred twenty (120) day continuance of the evidentiary hearing, reopening of discovery for a reasonable period, a meaningful opportunity to review and respond to the pending Motion for Sanctions before adjudication of that motion, reconsideration of the challenged procedural rulings, and, alternatively, recusal and reassignment of the assigned Administrative Law Judge.

*Id.* at 11 (emphasis added).

Plaintiff alleges that, in support of this requested relief:

> 64. The written motions explained that newly retained counsel had entered the case after discovery had closed, significant prehearing deadlines had expired, sanctions

proceedings remained pending, and the evidentiary hearing had been scheduled to commence in approximately two months.

65. Plaintiff further explained that, despite acting promptly upon entering the representation, newly retained counsel had not yet been afforded a reasonable opportunity to complete the investigation and preparation ordinarily necessary to defend a contested physician disciplinary proceeding involving Plaintiff's medical license.

66. Specifically, Plaintiff asserted that the requested procedural relief was necessary to permit newly retained counsel to review and organize the administrative record, investigate the factual allegations asserted by [Texas Medical] Board Staff, identify and interview witnesses, evaluate existing expert opinions, determine whether additional expert testimony should be developed, conduct such additional discovery as might reasonably be required, prepare witness examinations, prepare appropriate legal briefing, review and respond to the pending Motion for Sanctions, and otherwise prepare Plaintiff's defense before the State proceeded to adjudicate Plaintiff's physician's medical license.

67. Plaintiff further asserted that the requested procedural relief was limited in scope and was not intended to delay, avoid, or interfere with the Texas Medical Board's authority to adjudicate the disciplinary allegations. Rather, Plaintiff requested only those procedural accommodations that counsel believed were reasonably necessary to afford Plaintiff a meaningful opportunity to prepare and present his defense before the evidentiary hearing.

68. Plaintiff's written motions further explained that the requested continuance and related procedural relief would substantially reduce the risk of an erroneous adjudication by permitting newly retained counsel to complete the investigation and preparation reasonably necessary for effective representation while imposing only a limited and temporary delay in the administrative proceedings.

69. Plaintiff further asserted that denial of the requested procedural relief would require newly retained counsel to proceed to an evidentiary hearing without sufficient opportunity to complete the investigation, discovery, witness preparation, expert evaluation, evidentiary development, and legal preparation that counsel believed were reasonably necessary to provide Plaintiff a meaningful defense before adjudication of Plaintiff's constitutionally protected physician's medical license.

70. Plaintiff alleged in those motions that the requested relief was directed solely toward restoring procedural fairness before the scheduled evidentiary hearing and did not seek dismissal of the disciplinary proceeding, resolution of the merits of the [Texas Medical] Board's allegations, or immunity from professional regulation.

Doc. 1 at 11-13.

According to Plaintiff's Complaint, Judge Monson denied these written requests for reconsideration and other relief in an order dated June 24, 2026. After this ruling, Plaintiff's counsel prepared and submitted a "comprehensive Constitutional Notice and Request for Agency Intervention ("Notice") to the leadership of the Texas Medical Board, the leadership of the State Office of Administrative Hearings, and counsel representing the Texas Medical Board." Doc. 1 at 15. This Notice explained the procedural history of the disciplinary proceedings, including the appearance of newly retained counsel, and contended that "additional procedural safeguards were necessary before the scheduled evidentiary hearing could proceed consistent with the Due Process Clause of the Fourteenth Amendment" to the United States Constitution. *Id.* From the documents filed in this case, the submission of this Notice by Plaintiff's new counsel does not appear to have resulted in any change in the posture of Dr. Lane's disciplinary proceedings.

Plaintiff clarifies that he does not contend that his initial decision to represent himself, "standing alone, constituted a deprivation of [his] constitutional rights"; rather, he contends that "the procedural posture existing when experienced litigation counsel entered the case materially affected counsel's ability to prepare [his] defense before the scheduled hearing." *Id.* at 8. In addition, Plaintiff clarifies that he is not taking the position that any of the particular things that have taken place in his administrative disciplinary case, "standing alone, establish bias, prejudice, or an independent constitutional violation"; [r]ather, [it is his contention] that they became part of the overall procedural history considered by the Administrative Law Judge in evaluating [his newly retained counsel's] requests for procedural relief," and this "cumulative procedural history [has] deprived him of a meaningful opportunity to prepare and present his defense" in violation of his constitutional right to procedural due process. *Id.* at 11.

Plaintiff, therefore, requests in this Complaint that the court grant the following relief:

a. Assume jurisdiction over this action and retain jurisdiction until all prospective equitable relief ordered by the Court has been fully implemented.

b. Declare that Plaintiff possesses a constitutionally protected property interest in his existing physician's medical license.

c. Declare that the Due Process Clause of the Fourteenth Amendment requires constitutionally adequate procedures before the State may suspend, restrict, revoke, or otherwise impair Plaintiff's physician's medical license.

d. Declare that Plaintiff is constitutionally entitled to a meaningful opportunity to investigate the allegations, conduct appropriate discovery, prepare witnesses, respond fully to pending sanctions proceedings, present relevant evidence, and otherwise prepare and present his defense before the administrative evidentiary hearing proceeds.

e. Issue a Temporary Restraining Order, if necessary, preserving the status quo pending a hearing on Plaintiff's application for preliminary injunctive relief.

f. Issue a Preliminary Injunction temporarily enjoining Defendants, and those acting in concert with them who receive actual notice of the Court's Order, from conducting the scheduled evidentiary hearing until constitutionally adequate procedural safeguards have been afforded to Plaintiff. The manner in which those safeguards are implemented shall remain within the lawful discretion of the responsible state officials, subject only to the requirements of the United States Constitution.

g. Following a trial on the merits, issue a Permanent Injunction requiring Defendants, to the extent of their respective lawful authority, to ensure that any administrative adjudication affecting Plaintiff's physician's medical license proceeds only after constitutionally adequate procedures have been afforded.

h. Award Plaintiff reasonable attorney's fees, litigation expenses, and recoverable costs pursuant to 42 U.S.C. § 1988, together with any additional attorney's fees and costs authorized by applicable law.

i. Award Plaintiff taxable costs of court.

j. Award pre-judgment and post-judgment interest to the extent authorized by applicable law.

k. Grant Plaintiff such other and further declaratory, equitable, prospective, ancillary, or supplemental relief, whether at law or in equity, as the Court deems just and proper.

Doc. 1 at 31-32.

On August 4, 2026, Plaintiff filed his Motion (Doc. 4) in which he seeks an *ex parte* TRO pursuant to Federal Rule of Civil Procedure 65(b) to prevent the Texas Medical Board disciplinary hearing scheduled for August 17, 2026, from proceeding; entry of a preliminary injunction (after notice and a hearing) that maintains the status quo until entry of a final judgment in this case or until Defendants "provide procedures consistent with the Due Process Clause of the Fourteenth Amendment"; a declaration that the disciplinary hearing under the circumstances would violate Plaintiff's procedural due process rights; an award of attorney's fees and costs; and any other relief at law or equity to which Plaintiff is entitled. Doc. 4 at 4. The allegations and assertions in Plaintiff's Motion are substantially similar to those in his Complaint. In support of the Motion, Plaintiff submitted approximately 30 pages of briefing and approximately 223 pages of exhibits, some of which were filed with his Motion (Doc. 4 at 32-76) and some of which were included in a separate appendix (Doc. 5).[1]

Before the court was able to rule on the Motion, Plaintiff filed a 27-page "Emergency Notice of Supplemental Administrative Filing" in support of his pending Motion, which includes

---

[1] The documentation filed in support of Plaintiff's Motion includes: Dr. Lane's Declaration; a copy of Plaintiff's Complaint; a proposed order containing detailed proposed findings and legal conclusions and the precise relief sought by Plaintiff; Plaintiff's counsel's June 3, 2026 Notice of Appearance; the ALJ's August 21, 2025 Order, which set the hearing on the merits, the procedural schedule for the disciplinary proceeding, and the procedural requirements for the proceeding; Plaintiff's "Objection to [the Texas Medical] Board Staff's Motion for Sanctions, Motion to Vacate Sanctions Order, Motion For Reconsideration of Discovery Rulings, Motion For Continuance, Motion to Reopen Discovery, and Preservation of Constitutional Objections"; Plaintiff's "Motion for Reconsideration, Motion to Vacate Order No. 6, Alternative Motion for Recusal, Motion to Reopen Discovery, Motion For Continuance, and Supplemental Preservation of Constitutional Error"; Plaintiff's Request to Texas Medical Board attorney (Ms. Massey) for a complete copy of all of the Texas Medical Board's discovery; Plaintiff's Reply to the Texas Medical Board Staff's "Response in Opposition to Respondents['] June 10, 2026 and June 12, 2026 Pleadings"; Plaintiff's written request to the Texas Medical Board on July 17, 2026, requesting a 120-day continuance and explaining why additional time was needed to prepare a defense; and the ALJ's June 24, 2026 Order Ruling on Outstanding Motions. Plaintiff's briefs and his submission of exhibits in support of his Motion and Emergency Notice do not comply with this District's Local Civil Rules for motion practice. *See* L.R. 7.1(i) & 7.2(e). Compliance with Local Rules facilitates the expeditious resolution of pending motions, whereas failure to do so frequently delays the resolution of pending motions and unnecessarily consumes scarce judicial resources. ***Accordingly, Plaintiff's failure in the future to comply with applicable Local Rules will result in the noncompliant filing being sua sponte stricken without further notice or other sanctions that the court deems appropriate.***

as an exhibit a copy of Dr. Lane's "Emergency Motion to Stay Administrative Hearing Pending Judicial Determination of Constitutional Claims and, Alternatively, for Emergency Continuance." Doc. 7. This Emergency Notice was filed on August 10, 2026, the same date Dr. Lane's Emergency Motion was submitted and served on opposing counsel in the administrative disciplinary proceeding. According to the certificate of conference for the Emergency Motion, counsel for the Texas Medical Board opposes the motion. Plaintiff asserts that he filed the Emergency Notice because "the new administrative filing (Plaintiff's Emergency Motion) bears directly upon [his contention regarding the alleged] immediacy of the threatened injury, the availability and adequacy of administrative relief, and Defendants' contention that Dr. Lane's constitutional objections should first proceed through the state administrative process." Doc. 7 at 2.

## II. Legal Standard for Injunctive Relief

There are four prerequisites for issuance of a preliminary injunction or TRO under federal law. A court may grant such relief only when the movant establishes that:

> (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury [to the movant] outweighs the threatened harm to the defendant; and (4) the granting of the [TRO or] preliminary injunction will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (en banc). The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a TRO or preliminary injunction can be granted. *Mississippi Power and Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993. Otherwise stated, if a party fails to meet any of the four requirements, the court cannot grant the TRO or preliminary injunction. "The decision to

grant a preliminary injunction is to be treated as the exception rather than the rule." *Mississippi Power & Light Co*., 760 F.2d at 621 (citations omitted).

Under Rule 65(b)(1), the court may only issue a TRO without notice to the adverse party or its attorney if both of the following requirements are met:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1)(A)-(B). Thus, a TRO cannot be issued *ex parte* absent a clear showing that immediate and irreparable injury will result before the adverse party can be heard, and counsel for the movant's attorney certifies in writing the efforts made to give notice and the reasons why notice should not be required. *Id.*

## III. Discussion

Plaintiff's Motion sets forth the correct legal standard for an *ex parte* TRO and includes a certification by his attorney, stating that notice of this proceeding, Plaintiff's Motion, and the pleadings in this case have been provided to Defendants, but *ex parte* consideration of the Motion is nevertheless requested because of the imminent upcoming disciplinary hearing. The Motion is also accompanied by Plaintiff's affidavit. Given the fast approaching disciplinary hearing, which is scheduled to commence on August 17, 2026, and the alleged possibility that Plaintiff could lose his medical license as a result of this hearing, the court determines that *ex parte* resolution of his Motion is appropriate.[2] The court, nevertheless, concludes that he is not entitled to the injunctive relief requested.

---

[2] As noted herein, though, the court determines that this "time-crunch" was created and caused to some extent by Plaintiff's delay in filing his Motion for injunctive relief.

Plaintiff only requests declaratory and injunctive relief in this action based his claim that Defendants' conduct in connection with the disciplinary proceeding has or will result in a violation of his constitutional right to procedural due process under the Fourteenth Amendment of the United States Constitution. Plaintiff's claim for alleged due process violation(s) is brought pursuant to 42 U.S.C. § 1983. Because the issue of whether Plaintiff has a substantial likelihood of prevailing on the merits of his request for declaratory relief turns on the viability of his procedural due process claim under section 1983, the court's analysis focuses on his procedural due process claim under section 1983.

"[T]o state a valid claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Bridges v. Methodist Hosp.*, No. 24-20483, 2025 WL 1693074, at *3 (5th Cir. June 17, 2025) (quoting *Resident Council of Allen Parkway Vill. v. U.S. Dep't of Hous. & Urb. Dev.*, 980 F.2d 1043, 1053 (5th Cir. 1993)). "To state a Fourteenth Amendment due process claim under § 1983, a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010). In the context of procedural due process claims, "the deprivation by state action of a constitutionally protected interest . . . is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). Thus, the party alleging a procedural due process, must establish "(i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023) (citing *Zinermon*, 494 U.S. at 125).

Plaintiff does not cite any legal authority to support his allegation that Defendants qualify as state actors. Even assuming that Defendants qualify as state actors, Plaintiff's Motion and Complaint fail to allege that Mr. Carlton, in his official capacity as Executive Director of the Texas Medical Board, or Dr. Zaafran, in his official capacity as President of the Texas Medical Board, engaged in any conduct while acting under color of state law that allegedly violated Plaintiff's right to procedural due process in connection with his administrative disciplinary proceeding. The only reference to Mr. Carlton, Dr. Zaafran, and John Does 1 through 5 appears in the style of the case on the first page of his Complaint, and the summary of the parties on page 5 of his Complaint. Similarly, it is unclear what wrongful conduct, if any, John Does 1 through 5 are alleged to have engaged in, and Plaintiff's collective reference to all of the individual Defendants as "Defendants" is too vague.

Plaintiff asserts in paragraph of 32 of his Complaint that, "[w]henever reference is made to 'Defendants,' such reference includes each Defendant acting within the scope of his official authority and those acting in concert with that Defendant to the extent permitted by law and consistent with the prospective official-capacity relief sought herein." Doc. 1 at 6. Global allegations such as this of wrongdoing, however, are too vague and thus insufficient to state a plausible claim for relief. "At a minimum, [a plaintiff] should . . . explain what role each [d]efendant played . . . rather than grouping them together at all times." *Del Castillo v. PMI Holdings N. Am., Inc.*, 2016 WL 3745953, at *13 (S.D. Tex. July 13, 2016) (dismissing tort claims because the complaint "lump[ed] together multiple defendants without identifying who is responsible for which acts"); *see also Chyba v. EMC Mortg. Corp.*, 450 F. App'x 404, 406 (5th Cir. 2011) (per curiam) (affirming the district court's alternative ground for dismissing claims based on "vague allegations of malfeasance by a global group of unspecified 'defendants'—

without alleging any particular acts by the present Defendant"); *Cobarobio v. Midland Cnty., Texas*, No. MO:13-CV-00111-RAJ, 2015 WL 13608102, at *5-6 (W.D. Tex. Jan. 7, 2015), *aff'd*, 695 F. App'x 88, 2017 WL 3495588 (5th Cir. 2017) ("Plaintiff has failed to explain how each separate municipal or individual defendant allegedly committed separate Section 1983 violations. Instead, in a conclusory fashion, Plaintiff lumps Defendants together with no effort to distinguish them[.] . . . These general, global allegations of fault are not permissible pleading practice under the Federal Rules of Civil Procedure").

While Plaintiff alleges that Judge Monson, in his official capacity as Chief Administrative Law Judge of the State Office of Administrative Hearings—denied certain motions and requests for procedural relief by his new counsel, and that the denial of this requested relief contributed to the denial of his right to procedural due process because his new attorney will allegedly not have a reasonable opportunity to prepare an adequate defense on Plaintiff's behalf—the doctrine of judicial immunity extends to administrative law judges,[3] and injunctive relief is generally not available against judicial officers under § 1983. Under the 1996 amendments to that statute, injunctive relief "shall not be granted" in an action against "a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Because Plaintiff has not alleged either a violation of a declaratory decree or the unavailability of declaratory relief in his disciplinary proceedings, any claim for injunctive relief by him against Judge Monson is barred under § 1983.

Moreover, even if not barred, Plaintiff acknowledges his role in the situation that he now finds himself in. Although Plaintiff chooses his words carefully in describing what allegedly constitutes a violation of his right to due process, which boils down to his counsel's inability to

---

[3] *See Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985).

prepare an adequate defense for him—he recognizes that his decision to retain counsel in the late stages of his administrative disciplinary proceedings substantially contributed to the circumstances of which he now complains. In other words, unlike most procedural due process cases, Plaintiff does not contend that he was or will not be afforded a hearing before a decision is made whether to suspend or revoke his medical license; nor does he assert that he was not given adequate notice of the hearing or opportunity to be heard regarding issues that arose before the final hearing scheduled for August 17, 2026.

He, instead, takes issue with the denial of his new counsel's request to continue the final hearing, reopen discovery and other expired deadlines, and relitigate prior rulings, which, if granted, would amount to granting Plaintiff a complete "do-over" by restarting and undoing all of the proceedings in the case that had taken place during the prior year. Plaintiff, however, has not cited any binding legal authority in which a court has found a procedural due process violation in circumstances similar to those alleged in this case where the last-minute decision by a plaintiff to retain counsel, as opposed to the filing of new charges or assertion of new factual allegations, gives rise to a late request to continue an administrative hearing that is denied.[4] Plaintiff instead relies on legal authority that sets forth the general rules applicable to procedural due process claims.

Plaintiff also waited almost two months to bring this federal action and file his Motion for injunctive relief after Judge Monson first denied his requests for continuances and "other procedural relief" on June 11, 2026. Doc. 1 at 10. Rather than filing suit immediately, he opted to first seek written reconsideration of Judge Monson's rulings and then sought other relief from the Texas Medical Board via the administrative process, although he asserts that he was not required

[4] The court is also not aware of any case in which a court has held that the issuance of a TRO is an appropriate vehicle to allow a plaintiff to relitigate adverse rulings entered against him in another forum while he was proceeding pro se simply because he decided to retain counsel after the adverse rulings.

to do so for exhaustion purposes before filing this lawsuit. Additionally, because Plaintiff waited to file his Motion only eight business days before his final hearing is set to commence on August 17, 2026, and has yet to serve Defendants, the court was unable to expedite the briefing on his Motion to give Defendants an opportunity to respond before it issued its ruling. It is unclear whether this was the point of the delay or whether Plaintiff's delay in filing his Motion so close to the final hearing in his administrative disciplinary proceeding was unintentional. Either way, delay on his part, followed by requests for emergency relief appear to be a pattern.

While delay in this regard is not dispositive, it militates against a finding that a substantial threat of irreparable harm will result if a plaintiff's request for a TRO is denied because a failure to act sooner undercuts the sense of urgency ordinarily accompanied by a motion for injunctive relief and suggests that there is no irreparable injury.[5] *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985) (citation omitted); *see also Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (citing cases from other districts that have similarly held that an unexplained delay in seeking injunctive relief militates against a showing of irreparable harm); *United Farm Workers v. United States Dep't of Lab.*, No. 1:25-CV-1614 KES EGC, 2026 WL 1345918, at *16 (E.D. Cal. May 14, 2026) ("Although there is not a bright-line rule, courts have determined that a delay of two months weighs against finding irreparable harm) (citing cases); *but cf. Elrod v. Burn*s, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

[5] Plaintiff's delay in filing his Motion and considerable supporting materials also unnecessarily circumscribed the time the court had to carefully review the Motion and materials, consider Plaintiff's arguments, and rule on the Motion, and his failure to comply with the Local Rules for motion practice made it difficult for the undersigned to wade through his emergency filings. The court recognizes that unexpected emergencies that could not have been anticipated sometimes arise, but it frowns upon emergency motions and requests for relief that are filed and sought as a matter of course, as they tend to unnecessarily consume scarce judicial resources and delay the resolution of litigation.

Finally, the court also questions whether Plaintiff's claims, as pleaded, could survive an affirmative defense of Eleventh Amendment immunity if asserted by any Defendant.[6] The Supreme Court has explained that, because [t]he Eleventh Amendment does not automatically destroy original jurisdiction" and, instead, "grants the State a legal power to assert a sovereign immunity defense should it choose to do so[,] [t]he State can waive the defense," and it is not necessary for a "court to raise the defect on its own." *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998) (citations omitted). "Unless the State raises the matter, a court can ignore it." *Id.* As Defendants have not yet been served or made an appearance in this case, the court leaves the resolution of this potential issue for another time and will address it after full briefing by the parties if raised by any Defendant.

For all of the foregoing reasons, the court determines that Plaintiff is not entitled to a TRO because he has not established a substantial likelihood of success on the merits of his claims or a substantial threat of irreparable harm. The court, therefore, need not address whether Plaintiff has established the remaining requirements for a TRO. Plaintiff's request for a preliminary injunction to maintain the status quo during the pendency of this lawsuit is premised on the same reasoning as his request for a TRO. Consequently, it also fails and appears to be mooted by the court's ruling on his request for a TRO. Out of an abundance of caution, however, the court will deny without prejudice Plaintiff's request for a preliminary injunction.

## IV. Conclusion

For all of the reasons discussed, the court **concludes** that Plaintiff has not established each of the four requirements for a TRO and thus is not entitled to the injunctive relief requested. Accordingly, the court **denies** his request for an *ex parte* TRO and **denies without prejudice** his

---

[6] It appears from Plaintiff's allegations regarding "prospective relief" that he anticipates one or more Defendants will raise the affirmative defense of Eleventh Amendment immunity.

remaining requests for relief (Doc. 4). As it does not appear that service of process has been effected as to Defendants in this action, the court **directs** Plaintiff to provide Defendants or their counsel a copy of this memorandum opinion and order. Further, as indicated, Plaintiff's failure in the future to comply with applicable Local Rules will result in the noncompliant filing being *sua sponte* stricken without further notice or other sanctions that the court deems appropriate.

**It is so ordered** this 13th day of August, 2026.

Sam A. Lindsay
United States District Judge